COMMONWEALTH *vs.* CARL J. SWAHN.

Worcester.    September 14, 1977. — October 17, 1977.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Breaking and Entering. Pleading, Criminal,* Indictment. *Assault. Words,* "Building."

An indictment under G. L. c. 266, § 14, charging the defendant with breaking and entering a dwelling house in the nighttime with intent to commit a felony and making an actual assault on a person lawfully therein when read together with a specification that "a gun was pointed at the victim who was lawfully" in the dwelling house, was sufficient to charge a putting in fear within the meaning of c. 266, § 17. [645]

At the trial of a defendant under G. L. c. 266, § 17, the judge did not err in instructing the jury that a dwelling house was a "building" within the meaning of § 17. [645-648]

INDICTMENT found and returned in the Superior Court on May 5, 1976.

The case was tried before *O'Connor, J.*

*Conrad W. Fisher* for the defendant.

*Daniel F. Toomey,* Assistant District Attorney, for the Commonwealth.

GRANT, J.   The remaining indictment in this case is laid under the first sentence of G. L. c. 266, § 14,[1] and alleges that on February 15, 1976, the defendant, at West Brookfield, "did break and enter in the nighttime the dwelling house of Frank Kretchmer and Bertha Kretchmer with intent to commit a felony, to wit: robbery, Charles Kozlowski being lawfully therein, and after having so broken and entered, did make an actual assault on the said Charles Kozlowski." In response to an order of the court that it specify the manner and means by which the defendant had committed the offence alleged, the Commonwealth answered (among other things not here material) that "a gun was pointed at the victim who was lawfully" in the Kretchmer dwelling house.

At trial the Commonwealth offered evidence from which the jury could have found that at approximately 6:15 P.M. on February 15, 1976, the defendant and one DiCenzo, both armed with loaded and fireable revolvers and both possessed of stocking masks, approached the Kretchmer dwelling house with the intention of stealing money they supposed would be found therein. Following a break by

---

[1] "Whoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being then lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years."

DiCenzo, both individuals crawled into the house, where they blundered into a stakeout being conducted by State police officers with the permission of the Kretchmers, who had temporarily vacated the house at the suggestion of the police. As he was being arrested, DiCenzo pointed his revolver at one of the officers (Kozlowski), who was thereby put in fear.

At the close of the Commonwealth's case the defendant, who was tried alone, moved for a directed verdict, urging (among other things) that the evidence was insufficient to warrant a finding that any offence had been committed during the nighttime within the meaning of G. L. c. 278, § 10.[2] The judge ruled that the evidence was insufficient to warrant a finding that any offence had been so committed but also ruled, subject to the defendant's exception,[3] that he would submit the case to the jury on what he (the judge) regarded as the lesser included offence of breaking and entering in the daytime which is set out in G. L. c. 266, § 17.[4] See, generally, *Commonwealth* v. *Sitko,* 372 Mass. 305, 307-308 (1977), and cases cited. The judge did so following the conclusion of the defendant's case, and the defendant also excepted to the judge's instruction to the jury that "a dwelling is a building within the meaning of" § 17.

The defendant was convicted and sentenced to serve a term of from five to seven years at the Massachusetts Correctional Institution at Walpole. He has appealed, urging error in two respects.

---

[2] "If a crime is alleged to have been committed in the night time, night time shall be deemed the time between one hour after sunset on one day and one hour before sunrise on the next day; and the time of sunset and sunrise shall be ascertained according to mean time in the place where the crime was committed."

[3] No exception appears in the transcript, but the clerk's minutes on the defendant's motion state that exceptions were duly saved.

[4] "Whoever, in the night time, enters without breaking, or breaks and enters in the day time, a building, ship or vessel, with intent to commit a felony, the owner or any other person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years."

1. The defendant conceded at trial that he could be held responsible for the acts of DiCenzo on the theory that both had participated in a joint venture, but he argued below and continues to argue here that he cannot be convicted of a lesser included offence unless that offence is charged in the indictment. Specifically, the argument is that an "assault," such as is alleged in the indictment, can consist of either an attempted battery or putting the victim in fear (*Commonwealth* v. *Richards,* 363 Mass. 299, 303 [1973]), that the indictment does not specify the particular way in which the assault was committed, and, therefore, that he has not been effectively charged with putting Kozlowski "in fear," which is a prerequisite of a valid conviction under G. L. c. 266, § 17. The argument overlooks the Commonwealth's specification that the assault was committed by pointing a gun at Kozlowski, which not only can but must be read together with the indictment in order to determine the nature and character of the offence actually charged. *Commonwealth* v. *Ries,* 337 Mass. 565, 581 (1958). *Commonwealth* v. *Iannello,* 344 Mass. 723, 726 (1962). One normally anticipated result of pointing a gun at someone is that he is put in fear of bodily harm, and we are of the opinion that the reasonable import of the specification in this case is that the assault was committed by using the gun to put Kozlowski in fear rather than as the instrument of an attempted battery on him of the type considered in *Commonwealth* v. *Slaney,* 345 Mass. 135, 136-141 (1962).

We hold that the indictment, when read in the light of the specification, was sufficient to charge a putting in fear within the meaning of G. L. c. 266, § 17.

2. The defendant's other point is that the indictment alleges that he broke and entered a "dwelling house" within the meaning of G. L. c. 266, § 14, and that such a dwelling house cannot be equated with a "building" as that word is used in G. L. c. 266, § 17. The argument does not go much further than a bald assertion that "no case in this Commonwealth has ever held that a dwelling house is a building as that term is used in" § 17. We concur in the quoted assertion but reject the basic contention.

The breaking and entering statutes contain no definition of a "dwelling house" such as is found in the arson statutes. See the second sentence of the present G. L. c. 266, § 1. If one were to ponder the statutory history of G. L. c. 266, §§ 14 and 17,[5] he could construct a technically plausible argument to the effect that our successive legislative bodies intended a "dwelling house" (G. L. c. 266, § 14) to mean something separate and distinct from a "building" (G. L. c. 266, § 17). But any such argument would have to yield to established precedent and approved practice under our breaking and entering statutes, and particularly under what is now G. L. c. 266, § 18.[6]

The word "building" which appears in both of what are

---

[5] The common ancestor of §§ 14 and 17 is St. 1692, c. 18, § 4, which provided: "And if any person shall commit burglary, by breaking up any dwelling-house, warehouse, shop, mill, malthouse, barn, out-house, or any ship or other vessel, lying within the body of the county, or shall rob any person in the field or highway, every person so offending shall, upon conviction, be branded on the forehead with the letter B, and upon a second conviction, shall be set upon the gallows for the space of one hour, with a rope about his neck, and one end thereof cast over the gallows, and be severely whipt, not exceeding thirty-nine stripes; and upon a third conviction of the like offence, shall suffer the pains of death, as being incorrigible; and shall likewise upon the first and second convictions pay treble damages to the party injured, as is provided in case of theft." The subsequent history of § 14, some of which is summarized in *Commonwealth* v. *Hope,* 22 Pick. 1, 8-10 (1839), is found in: St. 1715, c. 1; St. 1769, c. 16, § 2; St. 1784, c. 48; St. 1805, c. 101, § 1; Rev. Stat. (1836) c. 126, § 9; St. 1839, c. 127; Gen. Stat. (1860) c. 161, § 10; St. 1871, c. 76; Pub. Stat. (1882) c. 203, § 10; St. 1888, c. 135, § 1; R. L. (1902) c. 208, § 14; G. L. (1921) c. 266, § 14; and St. 1966, c. 330. The subsequent history of § 17 is found in: St. 1784, c. 66, § 8; St. 1804, c. 143, § 5; Rev. Stat. (1836) c. 125, § 12; St. 1851, c. 156 § 2; Gen. Stat. (1860) c. 161, § 13; Pub. Stat. (1882) c. 203, § 13; R. L. (1902) c. 208, § 17; and G. L. (1921) c. 266, § 17.

[6] Section 18 provides: "Whoever, in the night time, enters a dwelling house without breaking, or breaks and enters in the day time a building, ship or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than five hundred dollars and imprisonment in jail for not more than two years." The legislative history of § 18 is found in: St. 1784, c. 66, § 8; St. 1805, c. 101, § 4; Rev. Stat. (1836) c. 126, § 13; St. 1851, c. 156, § 3; Gen. Stat. (1860) c. 161, § 14; St. 1869, c. 386; Pub. Stat. (1882) c. 203, § 15; R. L. (1902) c. 208, § 18; and G. L. (1921) c. 266, § 18.

now G. L. c. 266, § 17 and 18, made its first appearance in unmodified form in St. 1851, c. 156, §§ 2 and 3, respectively, and was carried over in that form into Gen. Stat. (1860) c. 161, §§ 13 and 14, respectively. Said § 14 provided for the punishment of "[w]hoever enters a dwelling-house in the night time, without breaking, or breaks and enters in the day time any building, ship or vessel, with intent to commit ... any ... felony (no person lawfully therein being in fear)." In *Commonwealth* v. *Reynolds*, 122 Mass. 454 (1877), the defendant was indicted under that section for breaking and entering "a certain building ... to wit, the dwelling-house of ... with intent to commit the crime of larceny therein" (at 454-455 and 458-459). The evidence disclosed a break into a dwelling house (at 458). The indictment did not allege whether the offence had been committed during the daytime or the nighttime, but the Supreme Judicial Court ruled that the defendant could nevertheless be convicted under said § 14, saying, "Whether in the daytime or night was immaterial" (at 457). Having in mind that the only nighttime offence expressly punishable under that section was the entry into a "dwelling-house" and that the only daytime offence so punishable was the breaking and entry of a "building, ship or vessel," the decision of the court necessarily equated a "dwelling-house" with a "building."

In the same vein is *Commonwealth* v. *Lavery*, 255 Mass. 327 (1926), in which the defendant was indicted for and convicted of breaking and entering a dwelling house in the nighttime with intent to commit larceny, and larceny (at 329). On appeal the defendant argued (as appears from the original papers) that the evidence failed to disclose that the offence had been committed in the nighttime. The court responded by saying that "[e]ven if there were no evidence that the crime was committed between one hour after sunset and one hour before sunrise, the jury could have found the defendant guilty of breaking and entering in the daytime" (at 333-334). As G. L. c. 266, §§ 17 and 18, were the only statutes then in effect which made express provision

for the punishment of a daytime break,[7] and as both those statutes did so only in the context of a break into a "building, ship or vessel," it necessarily follows that the court again equated a "dwelling house" with a "building" for the purpose of the breaking and entering statutes.

The foregoing cases serve to explain the judicially approved practice of indictment and conviction under G. L. c. 266, § 18, on allegations and proof that the defendant broke and entered a dwelling house in the daytime. See, e.g., *Commonwealth* v. *Lewis,* 346 Mass. 373, 375-378 (1963), cert. den. 376 U. S. 933 (1964); *Commonwealth* v. *Tilley,* 355 Mass. 507 (1969); *Commonwealth* v. *Wainio,* 1 Mass. App. Ct. 866 (1974). There is no reason to suppose that the word "building" was used in any different sense in G. L. c. 266, § 17.

The conclusion on this branch of the case is that the judge was correct in instructing the jury that a dwelling house is a "building" within the meaning of § 17.

*Judgment affirmed.*

---

[7] See now *G. L. c. 265, § 18A,* as appearing in St. 1969, c. 473, and G. L. c. 266, § 16A, as appearing in St. 1966, c. 408. The present case does not require consideration of the provisions of G. L. c. 266, § 19.