NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-459

COMMONWEALTH

vs.

DENNIS C. BAIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Before us is the defendant's consolidated appeal from his conviction of violating an abuse prevention order, G. L. c. 209A, § 7, and from an order revoking his probation. We affirm.

Background. After twenty-eight years of marriage, the defendant and his wife divorced in 2012. At an ex parte hearing held on June 18, 2019, a District Court judge granted the former wife a temporary abuse prevention order against the defendant pursuant to G. L. c. 209A, § 4. After a hearing on July 2, 2019, at which both parties were present, the judge granted an abuse prevention order for a two-year period, through July 2, 2021. The defendant was ordered to not abuse the former wife, not contact her, and stay away from her residence and workplace.

On May 7, 2020, a complaint issued charging the defendant with violating the abuse prevention order under G. L. c. 209A, § 7, on April 20, 2020.  At a jury trial, which commenced on March 1, 2022,[1] the Commonwealth presented evidence that the defendant violated the no-contact provision in the order by enclosing three letters in child support payments he sent to his former wife by mail between September 2019 and April 2020.  For example, in one letter the defendant wrote, "Please have a heart and write to me about the children and how they are all doing?"  Another letter asked, "By the way how are the children?  Please inform me as they are also my children."  As we have noted, the defendant was found guilty of the offense.  The judge sentenced the defendant to one year in the house of correction, suspended for eighteen months with certain conditions of probation, including completion of an Intimate Partner Abuse Education Program (IPAEP), compliance with any restraining orders, and an order to stay away from, have no contact with, and not abuse his former wife.

On April 1, 2022, the defendant was served with a notice of a probation violation and hearing alleging that he violated the conditions of probation by contacting his former wife in violation of the abuse prevention order.  The notice

---

[1] Although the defendant proceeded pro se, stand-by counsel was present and assisted the defendant throughout the trial.

2

subsequently was amended to include a violation based on a failure to enroll in the IPAEP. Following a hearing on April 19, the defendant was found in violation of his probation and was reprobated. The defendant now appeals from his conviction and from the order revoking his probation.

Discussion. 1. The defendant's conviction of violation of the abuse prevention order. a. Sufficiency of the evidence. The defendant first argues that the judge erred in denying his motion for a required finding of not guilty. We review the denial of a defendant's motion for a required finding of not guilty to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). "The inferences that support a conviction need only be reasonable and possible; [they] need not be necessary or inescapable" (quotation and citation omitted). Commonwealth v. Ross, 92 Mass. App. Ct. 377, 378 (2017). To sustain a conviction under G. L. c. 209A, § 7, the Commonwealth is required to prove beyond a reasonable doubt that "(1) a valid G. L. c. 209A order was issued by a judge, (2) the order was in effect on the date of the alleged violation, (3) the defendant had knowledge of the order, and (4) the defendant violated the

3

order."  Commonwealth v. Telcinord, 94 Mass. App. Ct. 232, 235 (2018).

The defendant argues that the evidence was insufficient to show that a valid G. L. c. 209A order was in effect at the relevant time because the statute provides that any relief granted by a judge at an initial two-party hearing "shall be for a fixed period of time not to exceed one year."  G. L. c. 209A, § 3.  It is only at a subsequent hearing that a judge may decide "to extend the order for any additional time reasonably necessary to protect the plaintiff or to enter a permanent order."  Id.  See Crenshaw v. Macklin, 430 Mass. 633, 636 (2000).  Accordingly, as the Commonwealth concedes, it was error for the judge on July 2, 2019, to impose the abuse prevention order for a period of two years.

Nevertheless, as a general rule, a defendant "does not have the option to act in violation of a court order and then, in a subsequent criminal proceeding, assert as a defense that the order should not have been issued."  Commonwealth v. Marrero, 85 Mass. App. Ct. 911, 912 (2014).  None of the exceptions to that rule applies here.  See id. at 912 n.4.  First, it is not the case that "a reasonable person in the defendant's position would not understand what conduct was prohibited by the order, the defendant was not aware of the order, or the defendant did not have a reasonable opportunity to comply with the order."  Id.

4

Second, the defendant had "a reasonable and effective method by which to challenge the order directly," by moving to modify its duration, but did not do so.  Id.  Third, the order was not "transparently invalid" and did not have "only a frivolous pretense to validity" (citation omitted).  Id.  Because the order was "merely voidable, but not void," the defendant risked "criminal prosecution and conviction" by disregarding it.  Id.

There was also sufficient evidence for a rational trier of fact to conclude that the defendant violated the abuse prevention order.  The order unambiguously required the defendant to stay away from the former wife and not abuse or contact her.  The no-contact provision in the order barred attempts to contact her "in person, by telephone, in writing, electronically or otherwise."

The defendant argues that the Commonwealth failed to prove that he lacked authority to contact his former wife by mail because she acknowledged during her testimony an order from the Probate and Family Court that authorized the defendant to send her child support payments by mail.  However, the former wife did not believe that the defendant was authorized to send her letters with the child support payments, and the jury could reasonably conclude that the no-contact provision in the abuse prevention order foreclosed such attempts at communication.  The defendant also read into the record a temporary order from the

5

Probate and Family Court dated June 24, 2013, which provided that "[a]ll communication between the parties shall be by e-mail only, absent a genuine emergency." It is not clear whether this temporary order was still in effect in 2020 after the imposition of the abuse prevention order in 2019. Even assuming that it was, the temporary order allowed only e-mail communication "absent a genuine emergency" -- not personal letters by mail in nonemergency situations, which were prohibited by the abuse prevention order. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to establish each of the essential elements of the crime of violation of an abuse prevention order.

b. Testimony about the former wife's responses to receiving the letters. The defendant next argues that a substantial risk of a miscarriage of justice resulted from the admission of irrelevant and unfairly prejudicial testimony about the former wife's emotional responses to receiving his letters. After the prosecutor asked her to describe the feelings she experienced when she received the defendant's letters in the mail, she testified that she experienced "fear" and was "[u]pset, annoyed," as well as feeling "[a]ttacked and invaded." The prosecutor also asked how she felt when the defendant asked about their children, and she responded "[u]nsafe." Later, the prosecutor elicited testimony from a Gloucester police officer

6

about the former wife's "demeanor" when she reported the defendant's letters.  The officer testified that the former wife was "very upset," appeared to be "scared," and "she sounded like she needed help and she wasn't getting it."

We agree that this testimony should not have been solicited or admitted.  See Commonwealth v. Gordon, 422 Mass. 816, 831 (1996) ("We urge caution in admitting evidence in criminal cases that appears to be more related to evoking sympathy then [sic] to proving the elements of the alleged crime or crimes").  The issue at trial was whether the defendant violated the no-contact provision in the abuse prevention order, and that violation did not require "proof that the protected party was placed in fear." Commonwealth v. Mendonca, 50 Mass. App. Ct. 684, 688 (2001). The Commonwealth argues that its questions were warranted because it did not know until the charge conference whether it was proceeding under a "no abuse" (in addition to a "no contact") theory of violation, and "[w]hether or not the victim was fearful when she received the letters would have been relevant to a theory of violation of the no abuse provision." The record, however, does not support that justification.  Prior to trial, the judge denied the Commonwealth's motion to introduce prior bad act evidence, stating that the case "will revolve around the letters and the violation of restraining order on 4/20/20 and only that."  In her opening statement, the

7

prosecutor told the jury that the Commonwealth's case was "very simple" and based on "a restraining order that prevented contact." Testimony about the former wife's responses to receiving the defendant's letters was therefore unnecessary to prove the elements of the crime.

Because the defendant did not object to such evidence at trial, our review is limited to whether the error in admitting it caused a substantial risk of a miscarriage of justice. Commonwealth v. McCoy, 456 Mass. 838, 845-846 (2010). Under that standard, we "consider the strength of the Commonwealth's case against the defendant (without consideration of any evidence erroneously admitted), the nature of the error, whether the error is 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error, and whether it can be inferred 'from the record that counsel's failure to object was not simply a reasonable tactical decision'" (citations and footnote omitted). Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Central to this analysis is whether there is serious doubt that the defendant's guilt has been fairly adjudicated. See Commonwealth v. Azar, 435 Mass. 675, 687 (2002). We have no such doubt here. The erroneous admission of the testimony was mitigated by the judge's instruction to the jury at the start of the case to "try the issues without fear or prejudice or bias or

8

sympathy." The Commonwealth's case that the defendant violated the no-contact provision of the abuse prevention order by sending his former wife letters was strong. The prosecutor did not discuss the former wife's emotional responses to the letters in her closing argument, and, in his final instructions, the judge instructed the jury on only a "no contact" (not a "no abuse") theory of violation. Accordingly, the admission of testimony concerning the former wife's emotional responses to receiving the defendant's letters did not create a substantial risk of a miscarriage of justice.

2. The probation revocation. The defendant argues that the evidence was not sufficient to prove that he violated the terms of his probation, and that the judge erred in relying on unreliable hearsay in concluding that he did. We disagree and affirm the order revoking probation.

On April 1, 2022, the defendant was served with a notice of probation violation alleging a "violation of a restraining order [on] 3/31/22." On April 8, probable cause for the violation was found at an initial probation violation hearing, and the defendant was detained until a final surrender hearing was held on April 19. Prior to that hearing, the defendant was notified of an additional violation involving his failure to enroll in the IPAEP. At the hearing on April 19, the defendant was found in violation based on the failure to enroll and was reprobated.

"A determination whether a violation of probation has occurred lies within the discretion of the hearing judge." Commonwealth v. Bukin, 467 Mass. 516, 519-520 (2014).  The Commonwealth must prove a violation of probation by a preponderance of the evidence.  Commonwealth v. Nunez, 446 Mass. 54, 59 (2006).  We review an order revoking probation to determine "whether the record discloses sufficient reliable evidence to warrant the findings by the judge that [the defendant] had violated the specified conditions of his probation."  Commonwealth v. Morse, 50 Mass. App. Ct. 582, 594 (2000).

The hearing judge did not abuse her discretion in finding that the defendant violated his probation.  The defendant was required as a condition of probation to complete the IPAEP.  At the revocation hearing, the probation officer presented the judge with a letter from the director of the IPAEP which indicated that the defendant had responded with hostility to the director's effort to enroll him in the program, stating that "this whole thing is bullshit" and that he would pursue a motion to "revise and revoke" this condition of probation.  Defense counsel argued at the hearing that, because the defendant was not represented at the time he agreed to the conditions of probation, he may not have fully appreciated that "he must do this program" and it was "not open for discussion."  The judge

concluded that there was "no excuse" for the defendant's failure to enroll in the program and directed him to do so within ten days.

The defendant now argues, for the first time on appeal, that the judge relied on impermissible hearsay. Although "standard evidentiary rules do not apply to probation revocation hearings," a finding of a probation violation must be based on reliable evidence. Commonwealth v. Durling, 407 Mass. 108, 117 (1990). "A judge may rely on hearsay evidence at a probation violation hearing where the evidence has substantial indicia of reliability." Commonwealth v. Ogarro, 95 Mass. App. Ct. 662, 668 (2019). Here, as the judge noted in her probation violation finding and disposition, the letter from the IPAEP director had substantial indicia of reliability because it was based on the director's personal conversation with the defendant, detailed in its account of the defendant's reaction to the prospect of enrollment in the program, and corroborated by defense counsel's acknowledgment that the defendant had not enrolled. See id., quoting Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016) (listing factors for assessing whether hearsay evidence is reliable). The defendant also argues that the judge's finding of a violation was premature because the order of probation conditions did not require him to enroll by a specific date. While we agree that it would have been helpful for the order to

11

set a specific enrollment deadline, it was not an abuse of discretion for the judge to find a violation based on the defendant's hostile response to the IPAEP director's inquiry and his failure to enroll by the date of the revocation hearing, six weeks into his probationary period.

Because this violation provided a sufficient basis for the judge to reprobate the defendant, we need not consider whether the defendant also violated the terms of his probation by contacting his former wife through e-mail.[2]  See Commonwealth v. Vargas, 475 Mass. 86, 93 (2016), quoting Durling, 407 Mass. at 112 ("Any conduct by a person on probation which constitutes a violation of any of the conditions of his probation may form the basis for the revocation of that probation").

---

[2] As to the e-mail issue, the judge's notation on the probation violation finding and disposition appears to be inconsistent with her findings at the hearing, as well as her decision to modify the order of probation conditions to allow the defendant to communicate with his former wife "about visitation by e-mail only about the child."

Conclusion. We affirm the judgment of conviction and the order revoking the defendant's probation.

So ordered.

By the Court (Vuono, Shin & Toone, JJ.[3]),

*[signature: Paul Little]*

Assistant Clerk

Entered: May 8, 2024.

---

[3] The panelists are listed in order of seniority.